FILED

2017 AUG -9 PM 2: 52

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY_____

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

June 2017 Grand Jury

CR No. 17 CR 00505 - RGK

| UNITED STATES OF AMERICA, | |
|---|---|
| Plaintiff, | I N D I C T M E N T |
| v. | [18 U.S.C. § 1349: Conspiracy to Commit Financial Institution Fraud; 18 U.S.C. § 1344(1): Financial Institution Fraud; 18 U.S.C. § 1014: False Statement to Financial Institution; 18 U.S.C. § 1956(h): Conspiracy to Engage in Money Laundering; 18 U.S.C. § 1956(a)(1)(B)(i): Money Laundering; 18 U.S.C. § 1957: Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity; 18 U.S.C. § 1028A(a)(1): Aggravated Identity Theft; 18 U.S.C. §§ 981(a)(1)(C), 982(a)(1), 982(a)(2), 1028(b)(5) and 28 U.S.C. § 2461(c): Criminal Forfeiture] |
| TURHAN LEMONT ARMSTRONG, aka "T," aka "Turhan Lemont Walker," aka "Emmett Louis," aka "Kent Warden," aka "Bob Jimenez," aka "Terrence," and FNU LNU aka "Mike," aka "Mounir," | |
| Defendants. | |

The Grand Jury charges:

INTRODUCTORY ALLEGATIONS

At all times relevant to this Indictment:

1.    Mission Federal Credit Union was a federally-insured financial institution, the deposits of which were insured by the National Credit Union Administration ("NCUA").

2. BMW Bank of North America was a federally-insured financial institution, the deposits of which were insured by the Federal Deposit Insurance Corporation ("FDIC").

3. USC Credit Union was a federally-insured financial institution, the deposits of which were insured by the NCUA.

4. State Farm Bank was a federally-insured financial institution, the deposits of which were insured by the FDIC.

5. US Bank was a federally-insured financial institution, the deposits of which were insured by the FDIC.

6. Altura Credit Union was a federally-insured financial institution, the deposits of which were insured by the NCUA.

7. JP Morgan Chase Bank was a federally-insured financial institution, the deposits of which were insured by the FDIC.

8. Chase Bank, N.A., was a federally-insured financial institution, the deposits of which were insured by the FDIC.

9. Pen Air Federal Credit Union was a federally-insured financial institution, the deposits of which were insured by the NCUA.

10. Pentagon Federal Credit Union was a federally-insured financial institution, the deposits of which were insured by the NCUA.

11. Navy Federal Credit Union was a federally-insured financial institution, the deposits of which were insured by the NCUA.

12. Wells Fargo Bank, N.A., was a federally-insured financial institution, the deposits of which were insured by the FDIC.

13. United Services Automobile Association ("USAA") was a federally-insured financial institution, the deposits of which were insured by the FDIC.

1    14.   Bank of the West was a federally-insured financial

2 institution, the deposits of which were insured by the FDIC.

3    15.   Merchants Bank of California, N.A., was a federally-insured

4 financial institution, the deposits of which were then insured by the

5 FDIC.

6    16.   Wilshire Bank, N.A., was a federally-insured financial

7 institution, the deposits of which were then insured by the FDIC.

8    17.   Bank of America, N.A., was a federally-insured financial

9 institution, the deposits of which were insured by the FDIC.

10    18.   These Introductory Allegations are hereby incorporated by

11 reference into Counts One through Forty of this Indictment as though

12 set forth fully therein.

COUNT ONE

[18 U.S.C. § 1349]

A.    OBJECT OF THE CONSPIRACY

Beginning on a date unknown and continuing to on or about August 9, 2017, in Los Angeles, Orange, and Riverside Counties, within the Central District of California, and elsewhere, defendants TURHAN LEMONT ARMSTRONG, also known as ("aka") "T," aka "Turhan Lemont Walker," aka "Emmett Louis," aka "Kent Warden," aka "Bob Jimenez," aka "Terrence" ("ARMSTRONG"), and FNU LNU, aka "Mike," aka "Mounir," ("MIKE"), together with co-conspirators Chang Lee ("Lee"), Hyunwook Cho ("Cho"), Joseph Khalil ("Khalil"), Antonio Bugatti ("Bugatti"), and others known and unknown to the Grand Jury, conspired and agreed with each other, knowingly and with intent to defraud, to devise, execute, and attempt to execute a scheme to defraud financial institutions as to material matters, in violation of Title 18, United States Code, Section 1344.

B.    MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE
        ACCOMPLISHED

The object of the conspiracy was to be accomplished, in substance, as follows:

1.    Defendant ARMSTRONG would oversee and control a conspiracy to defraud financial institutions through the submission of car loan applications containing false information, such as fake identity, employment, and income information.

2.    Defendants ARMSTRONG and MIKE would select financial institutions from which to fraudulently apply for car loans (the "financial institutions") and car dealerships from which to fraudulently purchase, or fraudulently obtain credit to lease, cars.

4

3. Defendants ARMSTRONG and MIKE would supply co-conspirators Lee and Bugatti, and others known and unknown to the Grand Jury, with false information to provide to the financial institutions in applying for car loans or purchasing cars.

4. Defendant ARMSTRONG would transport co-conspirator Bugatti, and others known and unknown to the Grand Jury, to the financial institutions.

5. Defendant ARMSTRONG, and co-conspirators Lee, Cho, and Bugatti, and others known and unknown to the Grand Jury, to fraudulently obtain cars or car loans, would knowingly submit to the financial institutions documents containing material misstatements, such as falsely identifying the applicant's name, social security number, employment status, income, or the vehicle that the loan purportedly was being used to purchase.

6. Defendants ARMSTRONG and MIKE, co-conspirators Lee, Cho, and Khalil, and others known and unknown to the Grand Jury, would either take possession of the vehicle, or, if no car had been purchased, take possession of the loan money that had been disbursed.

7. After the financial institutions funded the car loans, defendants ARMSTRONG and MIKE, and others known and unknown to the Grand Jury, would make initial payments on the loans to delay exposure of the scheme, and would then cease making further payments.

8. Co-conspirator Khalil, using co-conspirator Bugatti's identity information, would receive correspondence from the financial institutions, which he would provide to defendant ARMSTRONG.

C. OVERT ACTS

In furtherance of the conspiracy, and to accomplish its object, defendants ARMSTRONG and MIKE and co-conspirators Lee, Cho, Khalil,

and Bugatti, together with others known and unknown to the Grand Jury, on or about the following dates, committed and caused to be committed various overt acts, in the Central District of California and elsewhere, including, but not limited to, the following:

1. On June 19, 2009, defendant ARMSTRONG caused an unindicted co-conspirator to submit an application for a $50,000 loan to Mission Federal Credit Union using false information that had been supplied to the co-conspirator by defendant ARMSTRONG.

2. On March 23, 2011, defendants ARMSTRONG and MIKE caused bank account number xxxxxx7792 to be opened with Wells Fargo Bank, N.A., under the name "Kevin M. Rios" (the "Kevin Rios account"), listing social security number XXX-XX-5640.

3. On a date unknown, but no later than April 18, 2011, defendant ARMSTRONG provided co-conspirator Lee with social security numbers ("SSNs") to be used to fraudulently obtain cars and car loans and counseled co-conspirator Lee on how to fraudulently obtain the cars and car loans.

4. On a date unknown, but no later than September 6, 2013, co-conspirator Lee informed co-conspirator Cho that defendant ARMSTRONG had provided him with SSNs belonging to real individuals that would enable co-conspirators Lee and Cho to fraudulently obtain cars and car loans.

5. On April 18, 2011, using identity information supplied by defendant ARMSTRONG, co-conspirator Cho falsely represented SSN XXX-XX-8722 to be his own when applying for a loan from Pentagon Federal Credit Union for the purchase of a Mercedes Benz C300.

6. On September 4, 2011, using identity information supplied by defendant ARMSTRONG, co-conspirator Lee falsely represented SSN

XXX-XX-1732 to be his own and provided a false California driver's license when purchasing a 2011 Nissan Maxima from a car dealership in Buena Park, California.

7. On September 5, 2011, using identity information supplied by defendant ARMSTRONG, co-conspirator Lee falsely represented SSN XXX-XX-1732 to be his own and provided a false California driver's license when purchasing a 2010 Mercedes Benz C300 from a car dealership in Buena Park, California.

8. On September 5, 2011, using identity information supplied by defendant ARMSTRONG, co-conspirator Lee falsely represented SSN XXX-XX-1732 to be his own and provided a false California driver's license when purchasing a 2009 Mercedes Benz C300 from a car dealership in Los Angeles, California.

9. On September 7, 2011, using identity information supplied by defendant ARMSTRONG, co-conspirator Lee falsely represented SSN XXX-XX-1732 to be his own and provided a false California driver's license when purchasing a 2009 Audi A4 from a car dealership in Los Angeles, California.

10. On May 4, 2012, using identity information supplied by defendant ARMSTRONG, co-conspirator Lee falsely represented SSN XXX-XX-4193 to be his own when applying for a credit card account from Chase Bank, N.A.

11. On June 6, 2012, using identity information supplied by defendant ARMSTRONG, co-conspirator Lee falsely represented SSN XXX-XX-4193 to be his own and provided a false California driver's license number when applying for a credit card account from Pen Air Federal Credit Union.

12.   On July 2, 2012, defendant ARMSTRONG caused a Consumer Credit Application to be submitted to obtain a $59,952.15 car loan from BMW Bank of North America on behalf of Park Avenue Motors Corporation, which contained false information that had been supplied by defendant ARMSTRONG, including a false name, employer, and employer address.

13.   On July 13, 2012, using identity information supplied by defendant ARMSTRONG, co-conspirator Lee falsely represented SSN XXX-XX-4193 to be his own and provided a false California driver's license number when applying for a loan from Pen Air Federal Credit Union for the purchase of a 2008 Mercury.

14.   On July 18, 2012, defendant ARMSTRONG caused a Promissory Note and Security Agreement to be submitted to obtain a $30,000 car loan from State Farm Bank on behalf of Master Auto Sales, which contained false information that had been supplied by defendant ARMSTRONG, including a false name, employer, and address.

15.   On July 25, 2012, using co-conspirator Bugatti's name, co-conspirator Khalil executed an application to rent a residence on 12215 Zelzah Avenue, Granada Hills, California where co-conspirator Khalil would receive correspondence from defrauded financial institutions.

16.   On August 7, 2012, defendants ARMSTRONG and MIKE caused bank account number xxxxxxxx4937 (the "Master Auto Sales account") to be opened with Bank of America, N.A., on behalf of business "Master Auto Sales, LLC," under the name "Kent Warden."

17.   On August 23, 2012, defendants ARMSTRONG and MIKE caused bank accounts xxxxx3677 and xxxxx5513 to be opened with Wells Fargo

1  Bank, N.A., on behalf of business "Krystal Royal Motors," listing

2  taxpayer identification number 45-5560215.

3      18.  On August 27, 2012, defendant ARMSTRONG caused a Promissory

4  Note and Security Agreement that contained false information supplied

5  by defendant ARMSTRONG, including information concerning a vehicle

6  that had not actually been purchased, to be submitted to State Farm

7  Bank in order to obtain a $40,000 car loan on behalf of Master Auto

8  Sales.

9      19.  On August 28, 2012, using identity information supplied by

10  defendant ARMSTRONG, co-conspirator Cho falsely represented SSN XXX-

11  XX-4865 to be his own and provided a false California driver's

12  license when applying for an individual/member account with Pen Air

13  Federal Credit Union.

14      20.  On September 8, 2012, using identity information supplied

15  by defendant ARMSTRONG, co-conspirator Cho falsely represented SSN

16  XXX-XX-4865 to be his own and provided a false California driver's

17  license when purchasing a 2008 BMW 550i from a car dealership in

18  Irvine, California.

19      21.  On September 10, 2012, using identity information supplied

20  by defendant ARMSTRONG, co-conspirator Cho falsely represented SSN

21  XXX-XX-4865 to be his own and provided a false California driver's

22  license when purchasing a 2008 Lexus GX470 from a car dealership in

23  Santa Clarita, California.

24      22.  On September 18, 2012, defendant ARMSTRONG caused a

25  Promissory Note and Security Agreement that contained false

26  information that had been supplied by defendant ARMSTRONG, including

27  information concerning a vehicle that had not actually been

28

purchased, to be submitted to State Farm Bank in order to obtain a $40,000 car loan from State Farm Bank on behalf of Master Auto Sales.

23.  On September 27, 2012, using identity information supplied by defendant ARMSTRONG, co-conspirator Cho falsely represented SSN XXX-XX-4865 to be his own and provided a false California driver's license when purchasing a 2009 Acura MDX and 2013 Mitsubishi Lancer from a car dealership in Costa Mesa, California.

24.  On a date unknown, but no later than October 8, 2012, defendants ARMSTRONG and MIKE, and co-conspirator Khalil, arranged for co-conspirator Bugatti to travel from Taipei, Taiwan, to Los Angeles, California, so that co-conspirator Bugatti could fraudulently apply for car loans in the United States.

25.  On October 8, 2012, co-conspirator Khalil emailed co-conspirator Bugatti a flight itinerary for round-trip travel from Taipei, Taiwan, to Los Angeles, California.

26.  On November 8, 2012, at the direction of defendant ARMSTRONG, co-conspirator Bugatti applied to open an account with USC Credit Union using false information that had been supplied to him by defendant ARMSTRONG, including a false employer, employer address, and income.

27.  On November 9, 2012, defendant ARMSTRONG caused the business "Krystal Royal Motors, LLC" to be incorporated as a domestic limited liability company in the state of Georgia.

28.  On November 12, 2012, at the direction of defendant ARMSTRONG, co-conspirator Bugatti applied for a $109,358.79 car loan from BMW Bank of North America on behalf of Park Avenue Motors Corporation using false information that had been supplied to him by

defendant ARMSTRONG, including a false employer, employer address, and income.

29.   On November 16, 2012, at the direction of defendant ARMSTRONG, co-conspirator Bugatti applied for a $50,000 car loan from State Farm Bank on behalf of Krystal Royal Motors using false information that had been supplied to him by defendant ARMSTRONG, including a false employer, employer address, and income.

30.   On November 16, 2012, at the direction of defendant ARMSTRONG, co-conspirator Bugatti applied for a $50,000 loan from USC Credit Union on behalf of Krystal Royal Motors for the purchase of a 2011 Lexus GX 460 Premium using false information that had been supplied to him by defendant ARMSTRONG, including a false employer, employer address, and income.

31.   On November 19, 2012, at the direction of defendant ARMSTRONG, co-conspirator Bugatti requested that USC Credit Union apply the $50,000 loan for the purchase of a 2011 Lexus GX 460 Premium to the purchase of a 2011 Porsche Panamera, with a Vehicle Identification Number ("VIN") ending in -0187, from Krystal Royal Motors.

32.   On November 19, 2012, at the direction of defendant ARMSTRONG, co-conspirator Bugatti applied for a $50,000 loan from US Bank on behalf of Krystal Royal Motors using false information that had been supplied to him by defendant ARMSTRONG, including a false employer, employer address, and income.

33.   On November 21, 2012, at the direction of defendant ARMSTRONG, co-conspirator Bugatti applied for a $50,000 loan from Altura Credit Union on behalf of Krystal Royal Motors using false

1  information that had been supplied to him by defendant ARMSTRONG,

2  including a false employer, employer address, and income.

3      34.  On November 27, 2012, at the direction of defendant

4  ARMSTRONG, co-conspirator Bugatti applied for a $50,000 loan from JP

5  Morgan Chase Bank on behalf of Krystal Royal Motors using false

6  information that had been supplied to him by defendant ARMSTRONG,

7  including a false address and vehicle purchased.

8      35.  On November 28, 2012, at the direction of defendant

9  ARMSTRONG, co-conspirator Bugatti applied for a $51,750.04 loan from

10 TD Auto Finance LLC on behalf of Pedder Nissan using false

11 information that had been supplied to him by defendant ARMSTRONG,

12 including a false employer and income.

13     36.  On bout November 28, 2012, at the direction of defendant

14 ARMSTRONG, co-conspirator Bugatti applied for a $57,999.14 loan from

15 Pen Air Federal Credit Union on behalf of Hornburg Jaguar/Landrover

16 using false information that had been supplied to him by defendant

17 ARMSTRONG, including a false employer and income.

18     37.  On November 28, 2012, at the direction of defendant

19 ARMSTRONG, co-conspirator Bugatti applied for a $47,211 loan from VW

20 Credit Leasing Ltd. on behalf of Keyes Audi using false information

21 that had been supplied to him by defendant ARMSTRONG, including a

22 false employer, address, and income.

23     38.  On January 9, 2013, defendants ARMSTRONG and MIKE knowingly

24 caused a payment of $9,745, drawn on an account with insufficient

25 funds, to be deposited into a JP Morgan Chase Bank account number

26 xxxxxxxxxxxx1646 in the name of co-conspirator Bugatti.

27     39.  On January 9, 2013, defendants ARMSTRONG and MIKE knowingly

28 caused a payment of $3,900.82, drawn on an account with insufficient

funds, to be deposited into a JP Morgan Chase Bank account xxxxxxxxxxxx8083 in the name of co-conspirator Bugatti.

40.   On January 9, 2013, defendants ARMSTRONG and MIKE knowingly caused a check of $15,500, drawn on an account with insufficient funds, to be deposited into a Nordstrom Bank account in the name of co-conspirator Bugatti.

41.   On January 10, 2013, defendants ARMSTRONG and MIKE knowingly caused a check of $7,983.40, drawn on an account that had been closed, to be deposited into a Bank of the West account in the name of co-conspirator Bugatti.

42.   On January 12, 2013, defendants ARMSTRONG and MIKE knowingly attempted to cause a check of $15,000 to be deposited into a Bank of America, N.A., account in the name of co-conspirator Bugatti.

43.   On January 12, 2013, defendants ARMSTRONG and MIKE knowingly attempted to cause a check of $9,979.70 to be deposited into a Citi Business credit card account belonging to co-conspirator Bugatti.

44.   On January 15, 2013, defendants ARMSTRONG and MIKE knowingly caused a check of $8,450, drawn on an account that had been closed, to be deposited into a Citi Business credit card account belonging to co-conspirator Bugatti.

45.   On August 1, 2013, defendants ARMSTRONG and MIKE caused bank account xxxxxx7022 to be opened with Wells Fargo Bank, N.A., under the name "Ely Moore," listing social security number XXX-XX-9992.

46.   On November 28, 2013, defendant ARMSTRONG provided co-conspirator Bugatti with $5,000 in cash to assist co-conspirator Bugatti in leaving the United States.

47.   On September 3, 2014, defendants ARMSTRONG and MIKE caused bank account xxxxxx5601 to be opened with Wells Fargo Bank, N.A., under the name "Tracy Lang," listing social security number XXX-XX-2245.

48.   On September 9, 2014, defendant ARMSTRONG submitted a signature card to JP Morgan Chase Bank on which defendant ARMSTRONG falsely represented his name to be "Bob Jimenez" and his social security number to end -8422.

49.   On September 17, 2014, defendant ARMSTRONG submitted a membership application to Navy Federal Credit Union in which defendant ARMSTRONG falsely represented his name to be "Bob Jimenez," his social security number to end -8422, his date of birth to be September 9, 1975, and his employer for the previous five years and three months to have been TecTrue.

50.   On September 19, 2014, defendant ARMSTRONG used false information, including a false name, to obtain a $50,000 loan from USAA in the name of Bob Jimenez on behalf of Kevin Rios.

51.   On September 19, 2014, defendant ARMSTRONG used false information, including a false name, to obtain a $55,000 loan from Navy Federal Credit Union in the name of Bob Jimenez on behalf of Bob Jimenez and Ely Moore.

52.   On September 20, 2014, defendant ARMSTRONG used false information, including a false name, to obtain credit for a lease of a 2015 Audi A7 from VW Credit Leasing Ltd.

53.   On September 22, 2014, defendant ARMSTRONG used false information, including a false name, to obtain credit for a lease of a 2015 Mercedes-Benz S550V from Mercedes Benz of Delray.

54.   On September 22, 2014, defendant ARMSTRONG used false information, including a false name, to obtain credit for a lease of a 2014 Lexus LS 460 from Lexus Financial Services.

55.   On September 24, 2014, defendant ARMSTRONG used false information, including a false name, to obtain credit for a lease of a 2015 Cadillac Escalade from GM Financial.

56.   On September 29, 2014, defendant ARMSTRONG used false information, including a false name, to obtain a $50,000 loan from Pentagon Federal Credit Union in the name of Bob Jimenez on behalf of Tracy Lang and Bob Jimenez.

COUNTS TWO THROUGH TEN

[18 U.S.C. § 1344(1)]

A.   THE SCHEME TO DEFRAUD

1.   Beginning on a date unknown and continuing to on or about August 9, 2017, in Los Angeles and Riverside Counties, within the Central District of California, TURHAN LEMONT ARMSTRONG, also known as ("aka") "T," aka "Turner Lemont Walker," aka "Emmett Louis," aka "Kent Warden," aka "Bob Jimenez," aka "Terrence" ("ARMSTRONG"), and FNU LNU, aka "Mike," aka "Mounir," ("MIKE"), together with co-conspirators Joseph Khalil ("Khalil") and Antonio Bugatti ("Bugatti"), and others known and unknown to the Grand Jury, knowingly and with intent to defraud, executed, and attempted to execute, a scheme to defraud financial institutions as to material matters.

2.   The fraudulent scheme operated, in substance, in the manner described in Section B of Count One of this Indictment, which the Grand Jury hereby incorporates as though set forth fully herein.

B.   THE EXECUTIONS OF THE FRAUDULENT SCHEME

3.   On or about the following dates, in Los Angeles and Riverside Counties, within the Central District of California, and elsewhere, defendants ARMSTRONG and MIKE, co-conspirators Khalil and Bugatti, together with others known and unknown to the Grand Jury, committed the following acts, each of which constituted an execution of the fraudulent scheme:

| COUNT | DATE | VICTIM FINANCIAL INSTITUTION | ACT |
|-------|------|------------------------------|-----|
| TWO | 7/18/2012 | State Farm Bank | Application for $30,000 loan to purchase a 2010 Lexus RX350 from Master Auto Sales |

| | | | |
|---|---|---|---|
| THREE | 8/27/2012 | State Farm Bank | Application for $40,000 loan to purchase a 2011 Infiniti QX56 from Master Auto Sales |
| FOUR | 9/18/2012 | State Farm Bank | Application for $40,000 loan to purchase a 2011 Infiniti QX56 from Master Auto Sales |
| FIVE | 11/16/2012 | USC Credit Union | Application for $50,000 loan to purchase a 2011 Lexus GX 460 Premium from Krystal Royal Motors |
| SIX | 11/16/2012 | State Farm Bank | Application for $50,000 loan to purchase a 2008 Mercedes-Benz S Class Sedan from Krystal Royal Motors |
| SEVEN | 11/19/2012 | USC Credit Union | Application for $50,000 loan to purchase a 2011 Porsche Panamera from Krystal Royal Motors |
| EIGHT | 11/19/2012 | US Bank | Application for a $50,000 loan to purchase a 2012 Mercedes Benz 550 from Krystal Royal Motors |
| NINE | 11/21/2012 | Altura Credit Union | Application for $50,000 loan to purchase a 2011 Infiniti QX56 from Krystal Royal Motors |
| TEN | 11/27/2012 | JP Morgan Chase Bank | Application for $50,000 loan to purchase a 2008 Mercedes-Benz S Class Sedan from Krystal Royal Motors |

COUNTS ELEVEN THROUGH THIRTEEN

[18 U.S.C. § 1014; 18 U.S.C. § 2(a)]

On or about the dates set forth below, in Los Angeles County, within the Central District of California, defendants TURHAN LEMONT ARMSTRONG, also known as ("aka") "T," aka "Turner Lemont Walker," aka "Emmett Louis," aka "Kent Warden," aka "Bob Jimenez," aka "Terrence," and FNU LNU, aka "Mike," aka "Mounir," together with co-conspirator Antonio Bugatti ("Bugatti"), and others known and unknown to the Grand Jury, each aiding and abetting the others, knowingly made and caused to be made false statements for the purpose of influencing the actions of a financial institution, namely, USC Credit Union, in connection with applications to obtain a $50,000 loan on behalf of Krystal Royal Motors, as specifically described below:

| COUNT | DATE | DOCUMENT | FALSE STATEMENT(S) |
|---|---|---|---|
| ELEVEN | 11/8/2012 | Application to open new account with USC Credit Union | Co-conspirator Bugatti falsely stated that co-conspirator Bugatti was employed by Intelligence Firm Tech, that co-conspirator Bugatti earned a monthly salary of $11,000 from Intelligence Firm Tech, that Intelligence Firm Tech was located at 14416 Victory Blvd., Van Nuys, California, and that co-conspirator Bugatti had worked at Intelligence Firm Tech for six years and nine months |
| TWELVE | 11/16/2012 | Loan application to purchase a 2011 Lexus GX 460 Premium | Co-conspirator Bugatti falsely stated that co-conspirator Bugatti was employed by Intelligence Firm Tech, that co-conspirator Bugatti earned a monthly salary of $11,000 from Intelligence Firm Tech, and that co-conspirator Bugatti had worked at Intelligence Firm |

| | | | |
|---|---|---|---|
| | | | Tech for more than six years |
| THIRTEEN | 11/19/2012 | Loan application to purchase a 2011 Porsche Panamera | Co-conspirator Bugatti falsely stated that co-conspirator Bugatti was purchasing a 2011 Porsche Panamera with a Vehicle Identification Number ending in -0187 |

COUNT FOURTEEN

[18 U.S.C. § 1014]

On or about November 16, 2012, in Los Angeles County, within the Central District of California, defendants TURHAN LEMONT ARMSTRONG, also known as ("aka") "T," aka "Turner Lemont Walker," aka "Emmett Louis," aka "Kent Warden," aka "Bob Jimenez," aka "Terrence" ("ARMSTRONG"), and FNU LNU, aka "Mike," aka "Mounir," ("MIKE"), together with co-conspirator Antonio Bugatti ("Bugatti"), and others known and unknown to the Grand Jury, knowingly made and caused to be made false statements for the purpose of influencing the actions of a financial institution, namely, State Farm Bank, in connection with an application to obtain a $50,000 loan on behalf of Krystal Royal Motors, to wit: defendants ARMSTRONG and MIKE and co-conspirator Bugatti submitted and caused to be submitted to State Farm Bank a vehicle loan application and accompanying documents that represented (1) that co-conspirator Bugatti was employed by Intelligence Firm Tech, (2) that co-conspirator Bugatti earned a monthly salary of $11,000 from Intelligence Firm Tech, (3) that Intelligence Firm Tech was located at 14416 Victory Blvd., Van Nuys, California, (4) that co-conspirator Bugatti had worked at Intelligence Firm Tech for six years and nine months, and (5) that the loan would fund co-conspirator Bugatti's purchase of a 2008 Mercedes-Benz S Class Sedan, when in truth and in fact, as defendants ARMSTRONG and MIKE and co-conspirator Bugatti then well knew, (1) co-conspirator Bugatti was not employed by a company called Intelligence Firm Tech, (2) co-conspirator Bugatti did not earn a monthly salary of $11,000 from Intelligence Firm Tech, (3) there was no company named Intelligence Firm Tech located at 14416 Victory Blvd., Van Nuys, California,

1    (4) co-conspirator Bugatti had not worked at a company named

2    Intelligence Firm Tech for the previous six years and nine months,

3    and (5) co-conspirator Bugatti had not purchased a 2008 Mercedes-Benz

4    S Class Sedan.

COUNT FIFTEEN

[18 U.S.C. § 1014]

On or about November 19, 2012, in Los Angeles County, within the Central District of California, defendants TURHAN LEMONT ARMSTRONG, also known as ("aka") "T," aka "Turner Lemont Walker," aka "Emmett Louis," aka "Kent Warden," aka "Bob Jimenez," aka "Terrence" ("ARMSTRONG"), and FNU LNU, aka "Mike," aka "Mounir," ("MIKE"), together with co-conspirator Antonio Bugatti ("Bugatti"), and others known and unknown to the Grand Jury, knowingly made and caused to be made false statements for the purpose of influencing the actions of a financial institution, namely, US Bank, in connection with an application to obtain a $50,000 loan on behalf of Krystal Royal Motors, to wit: defendants ARMSTRONG and MIKE and co-conspirator Bugatti submitted and caused to be submitted to US Bank a statement that represented (1) that co-conspirator Bugatti was employed by Intelligence Firm Tech, (2) that conspirator Bugatti earned a salary of $132,000 from Intelligence Firm Tech in 2011, (3) that Intelligence Firm Tech was located at 14416 Victory Blvd., Van Nuys, California, and (4) that the loan would fund co-conspirator Bugatti's purchase of a 2012 Mercedes Benz 550 from Krystal Royal Motors, when in truth and in fact, as defendants ARMSTRONG and MIKE and co-conspirator Bugatti then well knew, (1) co-conspirator Bugatti was not employed by a company called Intelligence Firm Tech, (2) co-conspirator Bugatti had not earned a salary of $132,000 from Intelligence Firm Tech in 2011, (3) there was no company named Intelligence Firm Tech located at 14416 Victory Blvd., Van Nuys, California, and (4) co-conspirator Bugatti had not purchased a 2012 Mercedes Benz 550 from Krystal Royal Motors.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

COUNT SIXTEEN

[18 U.S.C. § 1014]

On or about November 21, 2012, in Los Angeles and Riverside Counties, within the Central District of California, defendants TURHAN LEMONT ARMSTRONG, also known as ("aka") "T," aka "Turner Lemont Walker," aka "Emmett Louis," aka "Kent Warden," aka "Bob Jimenez," aka "Terrence" ("ARMSTRONG"), and FNU LNU, aka "Mike," aka "Mounir," ("MIKE"), together with co-conspirator Antonio Bugatti ("Bugatti"), and others known and unknown to the Grand Jury, knowingly made and caused to be made false statements for the purpose of influencing the actions of a financial institution, namely, Altura Credit Union, in connection with an application to obtain a $50,000 loan on behalf of Krystal Royal Motors, to wit: defendants ARMSTRONG and MIKE and co-conspirator Bugatti submitted and caused to be submitted to Altura Credit Union a statement that represented (1) that co-conspirator Bugatti was employed by Intelligence Firm Tech, (2) that co-conspirator Bugatti earned a monthly gross income of $13,019.15 from Intelligence Firm Tech, (3) that Intelligence Firm Tech was located at 14416 Victory Blvd., Van Nuys, California, (4) that co-conspirator Bugatti had worked at Intelligence Firm Tech for six years, and (5) that the loan would fund co-conspirator Bugatti's purchase of a 2011 Infiniti QX56, Vehicle Identification Number ending in -0580, when in truth and in fact, as defendants ARMSTRONG and MIKE and co-conspirator Bugatti then well knew, (1) co-conspirator Bugatti was not employed by a company called Intelligence Firm Tech, (2) co-conspirator Bugatti did not earn a monthly gross income of $13,019.15 from Intelligence Firm Tech, (3) there was no company named Intelligence Firm Tech located at 14416 Victory Blvd.,

1  Van Nuys, California, (4) co-conspirator Bugatti had not worked at a

2  company named Intelligence Firm Tech for the previous six years; and

3  (5) co-conspirator Bugatti had not purchased a 2011 Infiniti QX56,

4  Vehicle Identification Number ending in -0580.

COUNT SEVENTEEN

[18 U.S.C. § 1014]

On or about November 27, 2012, in Los Angeles County, within the Central District of California, defendants TURHAN LEMONT ARMSTRONG, also known as ("aka") "T," aka "Turner Lemont Walker," aka "Emmett Louis," aka "Kent Warden," aka "Bob Jimenez," aka "Terrence" ("ARMSTRONG"), and FNU LNU, aka "Mike," aka "Mounir," ("MIKE"), together with co-conspirator Antonio Bugatti ("Bugatti"), and others known and unknown to the Grand Jury, knowingly made and caused to be made false statements for the purpose of influencing the actions of a financial institution, namely, JP Morgan Chase Bank, in connection with an application to obtain a $50,000 loan on behalf of Krystal Royal Motors, to wit: defendants ARMSTRONG and MIKE and co-conspirator Bugatti submitted and caused to be submitted to JP Morgan Chase Bank a statement that represented (1) that the loan would fund co-conspirator Bugatti's purchase of a 2008 Mercedes-Benz S Class Sedan, and (2) that co-conspirator Bugatti lived at 12215 Zelzah Avenue, Granada Hills, California, when in truth and in fact, as defendants ARMSTRONG and MIKE and co-conspirator Bugatti then well knew, (1) co-conspirator Bugatti had not purchased a 2008 Mercedes-Benz S Class Sedan, and (2) co-conspirator Bugatti did not live at 12215 Zelzah Avenue, Granada Hills, California.

COUNT EIGHTEEN

[18 U.S.C. § 1014]

On or about August 1, 2013, in Los Angeles County, within the Central District of California, defendants TURHAN LEMONT ARMSTRONG, also known as ("aka") "T," aka "Turner Lemont Walker," aka "Emmett Louis," aka "Kent Warden," aka "Bob Jimenez," aka "Terrence" ("ARMSTRONG"), and FNU LNU, aka "Mike," aka "Mounir," ("MIKE") knowingly made and caused to be made false statements for the purpose of influencing the actions of a financial institution, namely, Wells Fargo Bank, N.A., in connection with a consumer account application, to wit: defendants ARMSTRONG and MIKE submitted and caused to be submitted to Wells Fargo Bank, N.A., a statement that represented (1) that the accountholder was named "Ely Moore" and (2) that the accountholder's social security number was XXX-XX-9992, when in truth and in fact, as defendants ARMSTRONG and MIKE then well knew, (1) the accountholder's name was not "Ely Moore" and (2) the accountholder's social security number was not XXX-XX-9992.

COUNT NINETEEN

[18 U.S.C. § 1956(h)]

A.    OBJECTS OF THE CONSPIRACY

Beginning on a date unknown and continuing to on or about August 9, 2017, in Los Angeles County, within the Central District of California, and elsewhere, defendants TURHAN LEMONT ARMSTRONG, also known as ("aka") "T," aka "Turner Lemont Walker," aka "Emmett Louis," aka "Kent Warden," aka "Bob Jimenez," aka "Terrence" ("ARMSTRONG"), and FNU LNU, aka "Mike," aka "Mounir," ("MIKE"), and others known and unknown to the Grand Jury, conspired and agreed with each other to knowingly and intentionally commit the following offenses against the United States:

1.    Knowing that property involved in a financial transaction represented the proceeds of some form of unlawful activity, and which property was, in fact, the proceeds of specified unlawful activity, namely, financial institution fraud, in violation of Title 18, United States Code, Section 1344, conducted and attempted to conduct financial transactions affecting interstate and foreign commerce knowing that the transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of said unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i); and

2.    Knowingly engage and attempt to engage in monetary transactions involving criminally derived property of a value greater than $10,000, which property represented the proceeds of specified unlawful activity, namely, financial institution fraud, in violation of Title 18, United States Code, Section 1957(a).

B.   MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE
     ACCOMPLISHED

     The objects of the conspiracy were to be accomplished, in substance, as follows:

     1.   Defendants ARMSTRONG and MIKE would cause bank accounts to be opened under false names and identifying information to be used as funnel accounts, that is, bank accounts into which they would deposit and withdraw proceeds derived from bank fraud so as to conceal and disguise the nature, location, source, ownership, and control of the proceeds.

     2.   Defendant ARMSTRONG would deposit proceeds derived from bank fraud into the funnel accounts.

     3.   Defendants ARMSTRONG and MIKE would withdraw the fraudulently obtained funds from the funnel accounts, including through cash withdrawals, check cashing, and deposits into further accounts under the control of defendants ARMSTRONG and MIKE.

C.   OVERT ACTS

     In furtherance of the conspiracy, and to accomplish its objects, defendants ARMSTRONG and MIKE, together with others known and unknown to the Grand Jury, on or about the dates set forth below, committed and caused to be committed various overt acts, in the Central District of California and elsewhere, including, but not limited to, the following:

     1.   On March 23, 2011, defendants ARMSTRONG and MIKE caused bank account number xxxxxx7792 to be opened with Wells Fargo Bank, N.A., under the name "Kevin M. Rios" (the "Kevin Rios account"), listing social security number XXX-XX-5640.

2.   On August 7, 2012, defendants ARMSTRONG and MIKE caused bank account number xxxxxxxx4937 (the "Master Auto Sales account") to be opened with Bank of America, N.A., on behalf of business "Master Auto Sales, LLC," under the name "Kent Warden."

3.   On August 13, 2012, defendant ARMSTRONG deposited a check for $30,000, obtained by fraud, from State Farm Bank into the Master Auto Sales account.

4.   On August 23, 2012, defendants ARMSTRONG and MIKE caused bank accounts xxxxxx3677 and xxxxxx5513 to be opened with Wells Fargo Bank, N.A., on behalf of business "Krystal Royal Motors," listing taxpayer identification number 45-5560215.

5.   On September 4, 2012, defendant ARMSTRONG deposited a check for $40,000, obtained by fraud, from State Farm Bank into the Master Auto Sales account.

6.   On September 21, 2012, defendant ARMSTRONG deposited a check for $40,000, obtained by fraud, from State Farm Bank into the Master Auto Sales account.

7.   On August 1, 2013, defendants ARMSTRONG and MIKE caused bank account number xxxxxx7022 to be opened with Wells Fargo Bank, N.A., under the name "Ely Moore" (the "Ely Moore account"), listing social security number XXX-XX-9992.

8.   On September 3, 2014, defendants ARMSTRONG and MIKE caused bank account xxxxxx5601 to be opened with Wells Fargo Bank, N.A., under the name "Tracy Lang" (the "Tracy Lang account") listing social security number XXX-XX-2245.

9.   On September 23, 2014, defendant ARMSTRONG deposited a check for $55,000, obtained by fraud, from Navy Federal Credit Union into the Ely Moore account.

10.   On September 25, 2014, defendants ARMSTRONG and MIKE caused a check for $50,000, obtained by fraud from USAA to be deposited into the Kevin Rios account.

11.   On September 29, 2014, defendants ARMSTRONG and MIKE caused a check for $4,200 from the Ely Moore account and written out to "Yorui Papan" to be paid to Merchants Bank of California, N.A. from the Ely Moore account.

12.   On September 29, 2014, defendants ARMSTRONG and MIKE caused a check for $4,500 from the Ely Moore account and written out to "Joel Crespo" to be paid to Merchants Bank of California, N.A.

13.   On October 7, 2014, defendants ARMSTRONG and MIKE caused a check for $50,000, obtained by fraud, from Pentagon Federal Credit Union to be deposited into the Tracy Lang account.

14.   On October 7, 2014, defendants ARMSTRONG and MIKE caused a check for $4,800 from the Ely Moore account and written out to "Israel Yanir" to be paid to Merchants Bank of California, N.A.

15.   On October 28, 2015, defendants ARMSTRONG and MIKE caused a check for $4,800 from the Ely Moore account and written out to "Grayson Deloney" to be paid to Wilshire Bank, N.A.

16.   On October 29, 2015, defendants ARMSTRONG and MIKE caused a check for $4,700 from the Ely Moore account and written out to "Mohammad Ariuasil" to be paid to Wilshire Bank, N.A.

17.   On December 24, 2015, defendants ARMSTRONG and MIKE caused a check for $4,850 from the Kevin Rios account and written out to "Itamar Asolin" to be paid to Wilshire Bank, N.A.

18.   On December 24, 2015, defendants ARMSTRONG and MIKE caused a check for $4,950 from the Kevin Rios account and written out to "Adina Antebi" to be paid to Wilshire Bank, N.A.

19.   On December 31, 2015, defendants ARMSTRONG and MIKE caused $4,600 in cash to be withdrawn from the Kevin Rios account via Wilshire Bank, N.A.

20.   On April 15, 2016, defendants ARMSTRONG and MIKE caused a check for $2,450 from the Ely Moore account and written out to "Eyal Keinan" to be paid to Wilshire Bank, N.A.

21.   On April 16, 2016, defendants ARMSTRONG and MIKE caused a check for $2,450 from the Ely Moore account and written out to "Beryl Yosef Till" to be paid to Wilshire Bank, N.A.

22.   On May 6, 2016, defendants ARMSTRONG and MIKE caused a check for $2,275 from the Ely Moore account and written out to "Beryl Yosef Till" to be paid to Wilshire Bank, N.A.

23.   May 21, 2016, defendants ARMSTRONG and MIKE caused a check for $2,400 from the Kevin Rios account and written out to "Ben Pariente" to be paid to Wilshire Bank, N.A.

24.   On October 14, 2016, defendant MIKE deposited $2,500 in cash into the Ely Moore account at a branch in Toluca Lake, California.

COUNTS TWENTY TO THIRTY-FIVE

[18 U.S.C. § 1956(a)(1)(B)(i)]

On or about the following dates, in Los Angeles County, within the Central District of California, and elsewhere, defendants TURHAN LEMONT ARMSTRONG, also known as ("aka") "T," aka "Turner Lemont Walker," aka "Emmett Louis," aka "Kent Warden," aka "Bob Jimenez," aka "Terrence," and FNU LNU, aka "Mike," aka "Mounir," ("MIKE"), and others known and unknown to the Grand Jury, conducted and attempted to conduct the following financial transactions affecting interstate and foreign commerce, knowing that the property involved in such transactions represented the proceeds of some form of unlawful activity, and which transactions, in fact, involved the proceeds of specified unlawful activity, that is, bank fraud, in violation of Title 18, United States Code, Section 1344, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of such proceeds:

| COUNT | DATE | TRANSACTION |
|---|---|---|
| TWENTY | 8/13/2012 | Deposit of check in the amount of $30,000 from State Farm Bank into Bank of America account number xxxxxxxx4937 in the name of "Master Auto Sales" |
| TWENTY-ONE | 9/4/2012 | Deposit of check in the amount of $40,000 from State Farm Bank into Bank of America account number xxxxxxxx4937 in the name of "Master Auto Sales" |
| TWENTY-TWO | 9/21/2012 | Deposit of check in the amount of $40,000 from State Farm Bank into Bank of America account number xxxxxxxx4937 in the name of "Master Auto Sales" |
| TWENTY-THREE | 9/23/2014 | Deposit of check in the amount of $55,000 from Navy Federal Credit Union into Wells Fargo Bank, N.A., account number xxxxxx7022 in the name of "Ely Moore" |

| COUNT | DATE | TRANSACTION |
|---|---|---|
| TWENTY-FOUR | 9/25/2014 | Deposit of check in the amount of $50,000 from USAA into Wells Fargo Bank, N.A., account number xxxxxx7792 in the name of "Kevin Rios" |
| TWENTY-FIVE | 9/29/2014 | Check for $4,200 from Wells Fargo Bank, N.A., account number xxxxxx7022 addressed to "Yorui Papan" and paid to Merchants Bank of California, N.A. |
| TWENTY-SIX | 9/29/2014 | Check for $4,500 from Wells Fargo Bank, N.A., account number xxxxxx7022 addressed to "Joel Crespo" and paid to Merchants Bank of California, N.A. |
| TWENTY-SEVEN | 10/28/2015 | Check for $4,800 from Wells Fargo Bank, N.A., account number xxxxxx7022 addressed to "Grayson Deloney" and paid to Wilshire Bank, N.A. |
| TWENTY-EIGHT | 10/29/2015 | Check for $4,700 from Wells Fargo Bank, N.A., account number xxxxxx7022 addressed to "Mohammad Ariuasil" and paid to Wilshire Bank, N.A. |
| TWENTY-NINE | 12/24/2015 | Check for $4,850 from Wells Fargo Bank, N.A., account number xxxxxx7792 addressed to "Adina Antebi" and paid to Wilshire Bank, N.A. |
| THIRTY | 12/24/2015 | Check for $4,950 from Wells Fargo Bank, N.A., account number xxxxxx7792 addressed to "Joel Crespo" and paid to Wilshire Bank, N.A. |
| THIRTY-ONE | 12/31/2015 | Check for $4,600 from Wells Fargo Bank, N.A., account number xxxxxx7792 made out to "cash" and paid to Wilshire Bank, N.A. |
| THIRTY-TWO | 4/15/2016 | Check for $2,450 from Wells Fargo Bank, N.A., account number xxxxxx7022 addressed to "Eyal Keinan" and paid to Wilshire Bank, N.A. |
| THIRTY-THREE | 4/16/2016 | Check for $2,450 from Wells Fargo Bank, N.A., account number xxxxxx7022 addressed to "Beryl Yosef Till" and paid to Wilshire Bank, N.A. |
| THIRTY-FOUR | 5/6/2016 | Check for $2,275 from Wells Fargo Bank, N.A., account number xxxxxx7022 addressed to "Beryl Yosef Till" and paid to Wilshire Bank, N.A. |
| THIRTY-FIVE | 5/21/2016 | Check for $2,400 from Wells Fargo Bank, N.A., account number xxxxxx7022 addressed to "Ben Pariente" and paid to Wilshire Bank, N.A. |

COUNTS THIRTY-SIX TO FORTY

[18 U.S.C. § 1957(a)]

On or about the dates set forth below, in Los Angeles County, within the Central District of California, and elsewhere, defendant TURHAN LEMONT ARMSTRONG, also known as ("aka") "T," aka "Turner Lemont Walker," aka "Emmett Louis," aka "Kent Warden," aka "Bob Jimenez," aka "Terrence," knowing that the funds involved represented the proceeds of some form of unlawful activity, engaged, and willfully caused others to engage in, the following monetary transactions affecting interstate commerce, in criminally derived property of a value greater than $10,000, which property, in fact, was derived from specified unlawful activity, that is, bank fraud, in violation of Title 18, United States Code, Section 1344:

| COUNT | DATE | TRANSACTION |
|-------|------|-------------|
| THIRTY-SIX | 8/13/2012 | Deposit of check in the amount of $30,000 from State Farm Bank into Bank of America account number xxxxxxxx4937 in the name of "Master Auto Sales" |
| THIRTY-SEVEN | 9/4/2012 | Deposit of check in the amount of $40,000 from State Farm Bank into Bank of America account number xxxxxxxx4937 in the name of "Master Auto Sales" |
| THIRTY-EIGHT | 9/21/2012 | Deposit of check in the amount of $40,000 from State Farm Bank into Bank of America account number xxxxxxxx4937 in the name of "Master Auto Sales" |
| THIRTY-NINE | 9/23/2014 | Deposit of check in the amount of $55,000 from Navy Federal Credit Union into Wells Fargo Bank, N.A., account number xxxxxx7022 in the name of "Ely Moore" |
| FORTY | 9/25/2014 | Deposit of check in the amount of $50,000 from USAA into Wells Fargo Bank, N.A., account number xxxxxx7792 in the name of "Kevin Rios" |

COUNT FORTY-ONE

[18 U.S.C. § 1028A(a)(1)]

Beginning on a date unknown and continuing to on or about August 9, 2017, in Los Angeles and Orange Counties, within the Central District of California, and elsewhere, defendants TURHAN LEMONT ARMSTRONG, also known as ("aka") "T," aka "Turner Lemont Walker," aka "Emmett Louis," aka "Kent Warden," aka "Bob Jimenez," aka "Terrence" ("ARMSTRONG"), and FNU LNU, aka "Mike," aka "Mounir," ("MIKE"), together with co-conspirators Chang Lee and Hyunwook Cho, and others known and unknown to the Grand Jury, knowingly possessed, transferred, and used, without lawful authority, means of identification that defendants ARMSTRONG and MIKE knew belonged to another person, that is, the social security numbers of victims I.B., J.L., J.A.G., C.S., T.A.W., and A.D.F., during and in relation to the offense of Conspiracy to Commit Financial Institution Fraud, a felony violation of Title 18, United States Code, Section 1349, as charged in Count One of this Indictment.

COUNT FORTY-TWO

[18 U.S.C. § 1028A(a)(1); 18 U.S.C. § 2(a)]

On or about August 1, 2013, in Los Angeles County, within the Central District of California, and elsewhere, defendants TURHAN LEMONT ARMSTRONG, also known as ("aka") "T," aka "Turner Lemont Walker," aka "Emmett Louis," aka "Kent Warden," aka "Bob Jimenez," aka "Terrence" ("ARMSTRONG"), and FNU LNU, aka "Mike," aka "Mounir," ("MIKE"), aiding and abetting one another, knowingly possessed, transferred, and used, without lawful authority, means of identification that defendants ARMSTRONG and MIKE knew belonged to another person, that is, the social security number of victim A.D.F., during and in relation to the offense of False Statement to a Federally Insured Financial Institution, a felony violation of Title 18, United States Code, Section 1014, as charged in Count Eighteen of this Indictment.

### FORFEITURE ALLEGATION ONE

[18 U.S.C. § 981(a)(1)(C); 28 U.S.C. § 2461(c)]

Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given to defendants that the United States of America will seek forfeiture as part of any sentence pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction on Count One of this Indictment.

Each defendant convicted of the offense charged in Count One of this Indictment shall forfeit to the United States the following property:

a.   All right, title and interest in any and all property, real or personal, constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of such offense;

b.   Any property used or intended to be used to commit the offense; and

c.   To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described above.

Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), each defendant so convicted of the offense charged in Count One of this Indictment shall forfeit substitute property up to the total value of the property described above if, by any act or omission of said defendant, the property, or any portion thereof, (a) cannot be located upon the exercise of due diligence; (b) has been transferred or sold to, or deposited with, a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially

1   diminished in value; or (e) has been commingled with other property

2   that cannot be divided without difficulty.

FORFEITURE ALLEGATION TWO

[18 U.S.C. §§ 982(a)(1) and 982(a)(2)]

Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence pursuant to Title 18, United States Code, Sections 982(a)(1) and (2)(A), in the event of any defendant's conviction on any of Counts Two through Forty of this Indictment.

Each defendant so convicted shall forfeit to the United States of America the following property:

a. All right, title and interest in any and all property, real or personal, constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of any such offense;

b. Any property used or intended to be used to commit the offense; and

c. To the extent such property is not available for forfeiture, a sum of money equal to the total value of property described above.

Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), each defendant so convicted shall forfeit substitute property, up to the total value of the property described above if, as the result of any act or omission of said defendant, the property, or any portion thereof, (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION THREE

[18 U.S.C. §§ 982(a)(2) and 1028(b)(5)]

Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence pursuant to Title 18, United States Code, Sections 982(a)(2) and 1028(b)(5), in the event of any defendant's conviction on either or both of Counts Forty-One or Forty-Two of this Indictment.

Each defendant so convicted shall forfeit to the United States the following property:

a.   All right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of any such offense;

b.   Any property used or intended to be used to commit the offense; and

c.   To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described above.

Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(a)(2), each defendant so convicted shall forfeit substitute property up to the total value of the property described above if, by any act or omission of said defendant, the property, or any portion thereof, (a) cannot be located upon the exercise of due diligence; (b) has been transferred or sold to, or deposited with, a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been

1  substantially diminished in value; or (e) has been commingled with

2  other property that cannot be divided without difficulty.

3

4                                      A TRUE BILL

5

6                                      _____/s/_____

7                                      Foreperson

8  SANDRA R. BROWN
   Acting United States Attorney

9

10

11 LAWRENCE S. MIDDLETON
   Assistant United States Attorney

12 Chief, Criminal Division

13 KEVIN M. LALLY
   Assistant United States Attorney

14 Chief, Organized Crime Drug
     Enforcement Task Force Section

15

16 BENJAMIN R. BARRON
   Assistant United States Attorney

17 Deputy Chief, Organized Crime Drug
     Enforcement Task Force Section

18 ALEXANDER B. SCHWAB
   Assistant United States Attorney

19 Organized Crime Drug Enforcement
     Task Force Section

20

21

22

23

24

25

26

27

28